UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROL SOLBERG LEON,<br><br>                       Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                       Defendant. | CASE NO. C14-0864-RAJ-MAT<br><br>REPORT AND RECOMMENDATION<br>RE: SOCIAL SECURITY DISABILITY<br>APPEAL |

Plaintiff Carol Solberg Leon proceeds with counsel[1] in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court recommends this matter be REMANDED for further administrative proceedings.

///

---

[1] Counsel is reminded that all pleadings must conform to LRC 10(e)(3), which requires attorney contact information be typed in the lower right margin.

REPORT AND RECOMMENDATION
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1970.[2] She completed college and previously worked as a retail manager, barista, and salesperson. (AR 46, 60, 89.)

Plaintiff filed her DIB and SSI applications in December 2010, alleging disability beginning April 1, 2010. (AR 208-24.) She remains insured for DIB through December 31, 2014. Her applications were denied initially and on reconsideration, and she timely requested a hearing.

On July 9, 2012, ALJ Verrell Dethloff held a hearing, taking testimony from plaintiff and two lay witnesses. (AR 57-74.) On August 3, 2012, the ALJ issued a decision finding plaintiff not disabled. (AR 22-51.)

Plaintiff timely appealed. The Appeals Council denied review on April 11, 2014 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the April 1, 2010 alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

plaintiff's benign brain tumors, minor motor seizure disorder, affective disorders, and anxiety disorders severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff had the RFC to perform sedentary work, with the ability to lift/carry twenty pounds occasionally and ten pounds frequently, stand and/or walk, with normal breaks, for two hours in an eight-hour workday, and sit, with normal breaks, for six hours in an eight-hour workday.  Plaintiff can push/pull unlimitedly within the assessed exertional limitations, can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, or scaffolds.  She has no manipulative, visual, or communicative limitations, but should avoid even moderate exposures to hazards, such as machinery and unprotected heights.  Plaintiff can understand and remember simple tasks, as well as some detailed tasks, and can carry out these tasks in a predictable routine.   With that RFC, the ALJ concluded plaintiff was unable to perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  The ALJ here concluded, with consideration of the Medical-Vocational Guidelines, that jobs exist in significant numbers in the national economy that plaintiff can perform.  The ALJ, therefore, found plaintiff not disabled.

REPORT AND RECOMMENDATION
PAGE - 3

This Court's review of the final decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the final decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in evaluating medical opinions, in rejecting her testimony and the testimony of lay witnesses, and in reaching his conclusion at step five. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where the opinions of a treating or examining physician are contradicted by another physician's opinions, as in this case, the ALJ could not reject the physicians' opinions without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A.   Dr. Eric Gierke

Plaintiff had a large right-sided meningioma (brain tumor), originally discovered in March 2010, removed by surgery in early June 2010. (AR 340, 414.) She subsequently reported

REPORT AND RECOMMENDATION
PAGE - 4

seizures and other symptoms, and received treatment in the form of medications and, beginning in April 2011, "CyberKnife" radiation therapy to treat residual meningioma that could not be removed by surgery due to proximity to vessels. (*See*, *e.g.*, AR 452-55.)

Treating physician Dr. Eric Gierke first evaluated plaintiff on June 28, 2011. (AR 454-59.) He stated plaintiff had made a good recovery from her surgery and cyberknife treatment. (AR 459.) The ALJ accorded that opinion significant weight based on Dr. Gierke's status as a neurologist and expertise in reviewing objective images, including February and April 2011 MRI scans, and because Dr. Gierke formed his opinion after a thorough examination, and provided a detailed explanation of his observations and the evidence relied upon in forming his opinion. (AR 40.) The ALJ considered Dr. Gierke's observation that plaintiff's meningioma "'clearly puts her at risk for seizures[,]'" but that she had "'fortunately not had a grand mal' and has been on a 'fairly good' dose of Lamictal, which limited her seizure episodes to only 'small spells'." (*Id*. (citing AR 454-59).) The ALJ also found Dr. Gierke's opinion consistent with the record as a whole, including a June 2011 assessment by Dr. Robert Meier, Dr. Gierke's July to October 2011 treatment notes, and the findings from Dr. Lisa Caylor's September 2011 examination. (*Id*. (citing AR 465 (plaintiff reported to Dr. Meier her seizures were then limited to once a week and "quite transient and self-limited[,]" and she had intermittent, almost daily, but less severe headaches; finding plaintiff "appears to be clinically doing well, with less frequent micro-seizures, and less severe headaches."), AR 523-56 (Dr. Gierke's 2011 treatment notes), and AR 535-49 (Dr. Caylor's examination was normal other than very slight subjective decrease in appreciation of light touch over right hand, and wide based and only mildly unsteady gait).)

In a June 29, 2012 questionnaire, Dr. Gierke opined that, as of April 1, 2010, plaintiff had significant limitation in her ability to focus or concentrate, complete tasks in a timely manner,

REPORT AND RECOMMENDATION
PAGE - 5

and/or interact appropriately with other people, and would not, as of that same date, be able to function successfully in any job, including unskilled sedentary work, on a regular and continuing basis.  (AR 581.)  He pointed to plaintiff's "very large" meningioma, her non-epileptic seizures, and her anxiety.  (*Id*.)  The ALJ found this opinion unpersuasive and gave it little weight, finding it appeared to be based solely on diagnoses and was inconsistent with the record as a whole, including Dr. Gierke's own physical examination findings and opinions of plaintiff made between June and October 2011.  (AR 42 (citing AR 448-79, 523-56).)

Plaintiff argues the ALJ's reasons for rejecting Dr. Gierke's June 2012 opinions are impermissibly vague, and that, contrary to the ALJ's conclusion, the evidence of record supports Dr. Gierke's opinions.  The Court, for the reasons set forth below, agrees that the ALJ's consideration of the evidence from Dr. Gierke lacks the support of substantial evidence.

Dr. Gierke, in a letter dated July 29, 2011, opined plaintiff was "disabled due to her brain tumor . . . and seizures due to that brain tumor for which she takes anti epileptic medications[,]" and that her disability would be "long-term . . . , possibly permanent."  (AR 460.)  "The ALJ must consider all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  *See also* 20 C.F.R. §§ 404.1457(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (ALJ "may not reject 'significant probative evidence' without explanation.") (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)).  Also, while it is true opinions as to disability are reserved to the Commissioner, this fact does not undermine the validity of opinions of treating and examining physicians; instead, such opinions are not "entitled to controlling weight or special significance."  Social Security Ruling (SSR) 96-5p.  In this case, the ALJ erred in failing to address the July 2011 opinion of Dr. Gierke, rendered just one month after the June

REPORT AND RECOMMENDATION
PAGE - 6

2011 report reflecting Dr. Gierke's initial evaluation of plaintiff and to which the ALJ accorded significant weight.

The Court further finds the ALJ's consideration of Dr. Gierke's June 2012 opinions problematic. The ALJ failed to consider the consistency of Dr. Gierke's July 2011 and June 2012 opinions. Also, despite initially finding these factors compelling, the ALJ failed to consider the relevance of Dr. Gierke's status as a neurologist and his expertise in association with opinions he rendered after a full year of treating plaintiff. Nor is it clear Dr. Gierke based his June 2012 opinions solely on diagnoses or that his opinions reflect inconsistency with the record as a whole or his own findings. Dr. Gierke, for example, based his opinions as to plaintiff's limitations in part on plaintiff's "non-epileptic" seizures. (AR 581.) This reflects his consideration of an October 2011 EEG revealing "16 signaled events," a psychological test supporting the diagnosis of "pseudoseizures," and plaintiff's plan to follow-up with psychiatric treatment, and Dr. Gierke's opinion "that a fair number of people with pseudoseizures also have legitimate seizures," that plaintiff's "history of meningioma puts her at risk for seizures[,]" and his plan to continue plaintiff's treatment with anti-seizure medication. (*See*, *e.g.*, AR 485-91, 521-26.) The ALJ, as such, should reconsider all of the medical evidence from Dr. Gierke on remand.

B.  Dr. James Coghlan

Treating physician Dr. James Coghlan completed an evaluation of plaintiff for the Department of Social and Health Services (DSHS) in August 2010. (AR 42, 387-94.) He assessed a number of marked and severe limitations resulting from residuals from brain surgery, left neck and shoulder symptoms, seizure disorder, and anxiety, panic, and depression, and deemed plaintiff severely limited. (AR 389.) The ALJ accorded little weight to the assessment

because it was performed within two months after plaintiff underwent a major brain surgery from which she was still recovering. (AR 42.) The ALJ also construed the report as reflecting Dr. Coghlan's opinion that plaintiff should expect to regain the ability to work within six months, and pointed to a previous discussion of the medical record as showing plaintiff's condition improved after surgery. (*Id*. (citing AR 390).) He concluded Dr. Coghlan's opinion had little bearing on plaintiff's functioning during the longitudinal period at issue. (*Id*.)

The ALJ reasonably considered the timing of Dr. Coghlan's report and his explicit consideration of the fact that plaintiff was still recovering from surgery at the time of the evaluation. (*See* AR 376, 390, 394.) However, Dr. Coghlan did not opine he expected plaintiff to regain the ability to work within six months of the evaluation. He, instead, recommended that, following treatment and in six months, plaintiff's ability to work should be re-evaluated. (AR 390.) Dr. Coghlan otherwise estimated the assessed limitations would last for a period of ninety days to twelve months and stated he was "not sure" as to the number of months. (AR 390.) On another form, Dr. Coghlan opined plaintiff's work function would be impaired for six to twelve months. (AR 393.) Also, while the ALJ could be said to have reasonably construed the record as reflecting improvement of plaintiff's condition in months subsequent to Dr. Coghlan's evaluation, the ALJ erred in considering some of that evidence of record, including evidence from Dr. Gierke. Also, plaintiff submitted medical evidence to the Appeals Council contradicting the ALJ's interpretation of the record as reflecting her improvement and providing additional support for her claim. (*See* AR 584-91.) For these reasons, the ALJ should also reconsider the evidence from Dr. Coghlan on remand.

C.  Dr. Peter Moore

Psychological consultative examiner Dr. Peter Moore evaluated plaintiff in May 2011.

REPORT AND RECOMMENDATION
PAGE - 8

(AR 436-39.)  The ALJ described Dr. Moore as noting plaintiff's performance in memory and concentration tests had improved since August 2010, and opining plaintiff still had mild to moderate difficulty with short-term memory for simple instruction, and is likely to deteriorate in settings with more distractions, stimulation, and time or performance pressure, but "[n]evertheless, . . . is likely able to understand simple to moderately complex information with little to no difficulty[.]"  (AR 40-41.)  He accorded Dr. Moore's opinions significant weight as based on a thorough examination, supported with a detailed explanation, and consistent with the record as a whole, and taking into account plaintiff's reported symptoms of mild to moderate memory and focus limitations.  (AR 41.)

The ALJ did not accurately describe the content or order of Dr. Moore's opinions.  Dr. Moore opined:

> Currently, she appears to be able to understand simple to moderately complex information with little to no difficulty.  *However*, her performance on measures of her memory and concentration *which have remained consistent since last August*, suggest that she has mild to moderate difficulty with short term memory for simple information.  This is likely to deteriorate in settings with more distractions, stimulation, and time or performance pressure.

(AR 439, emphasis added.)  The ALJ also failed to address the remainder of Dr. Moore's evaluation, including his opinion plaintiff was "more vulnerable to emotional distress which could interfere with memory, concentration, planning, and organization[,]" and that her ability to persist at tasks would be mildly to moderately limited due to fatigue and anxiety.  (*Id*.)  Given these discrepancies, and the other errors in the ALJ's decision, the ALJ should also reconsider the evidence from Dr. Moore on remand.

D.      Dr. David Widlan

Dr. David Widlan evaluated plaintiff on behalf of DSHS in August 2010, finding

REPORT AND RECOMMENDATION
PAGE - 9

plaintiff's depression and anxiety of moderate to marked severity as related to task completion and the ability to focus, and assessing marked limitations in all areas of social functioning. (AR 394-404.) The ALJ accorded some weight to Dr. Widlan's assessment that plaintiff had no limitations in cognitive functioning, but little weight to the opinions as to task completion, ability to focus, and social functioning, and little weight to the global assessment of functioning (GAF) score reflecting serious symptoms or impairment in functioning. (AR 41.)

The ALJ found the assessed limitations inconsistent with the record as a whole, which showed plaintiff was less depressed than Dr. Widlan opined. (AR 42.) He noted, as an example, that several treating doctors and evaluators observed plaintiff "shows pleasant affect with no acute distress[.]" (*Id*. (citing AR 437-38, 538).) The ALJ also noted Dr. Widlan did not have a treating relationship with plaintiff, and that, other than reciting plaintiff's subjective complaints of emotional symptoms, did not provide any explanation for the low scores assigned to plaintiff under the Beck Depression Inventory (BDI-II) test. (*Id*.) He perceived Dr. Widlan to have relied quite heavily on plaintiff's subjective reporting of symptoms and limitations, and to "uncritically accept as true most, if not all, of what plaintiff reported." (*Id*.)

The ALJ further stated:

> The evaluation was conducted for the purpose of determining the claimant's eligibility for state assistance; the claimant was likely aware that the continuation of her state assistance was dependent upon the DSHS evaluation, and the claimant therefore had incentive to overstate her symptoms and complaints.

(*Id*.) Finally, the ALJ found the fact that Dr. Widlan did not have the benefit of reviewing subsequent evidence in the record to further diminish the value of his opinion. (*Id*.)

The ALJ's consideration of Dr. Widlan's evaluation lacks the support of substantial evidence. "[I]n the absence of other evidence to undermine the credibility of a medical report,

REPORT AND RECOMMENDATION
PAGE - 10

the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *accord Lester*, 81 F.3d 832 (absent "evidence of actual improprieties," examining doctor's findings entitled to no less weight when examination procured by the claimant than when obtained by the Commissioner). Here, the ALJ did not point to any other evidence undermining the credibility of Dr. Widlan's report. Therefore, the ALJ erred in relying on the mere fact that Dr. Widlan's evaluation was obtained for the purpose of securing state assistance as a basis for rejecting the opinions contained therein. Also, the other errors in the ALJ's decision and the evidence submitted to the Appeals Council calls into question the ALJ's reliance on a perceived inconsistency between Dr. Widlan's opinions and the record as a whole, as well as Dr. Widlan's inability to consider later-dated evidence. Lastly, the ALJ's perception that Dr. Widlan relied quite heavily on plaintiff's subjective reporting and uncritically accepted her subjective reports is called into question by the fact that Dr. Widlan found no cognitive limitations in spite of plaintiff's reports she struggled with memory and concentration, and Dr. Widlan's own observation of plaintiff's depressive symptoms and her scoring on the BDI-II test and the Beck Anxiety Inventory test. (AR 395, 397, 399.) The ALJ should, for all of these reasons, reconsider Dr. Widlan's evaluation on remand.

E.    <u>Drs. Eugene Kester and Vincent Gollogly</u>

The ALJ accorded significant weight to the June and August 2011 opinions of nonexamining State agency consultants Drs. Eugene Kester and Vincent Gollogly. (AR 39-40.) Drs. Kester and Gollogly opined plaintiff was able to understand simple to moderately complex information with little to no difficulty, that her ongoing mood symptoms, depression, and anxiety would reduce sustained concentration and stress tolerance, but not to the degree as to prevent the

ability to engage in simple work activity the majority of the time, and that plaintiff would do best in a work setting with few distractions, less stimulation, and time or performance pressure, "as these would reduce her ability to adopt to complex or rapid changes, but she could follow a predictable routine." (AR 87-88, 121-22.) The ALJ found these opinions consistent with the evidence of record, including the findings and opinions of Dr. Moore. (AR 40.) He also found the evidence received at the hearing level did not show plaintiff is more limited than opined by these physicians, and that the opined limitations were accounted for in the assessed RFC. (*Id*.)

The numerous errors in the consideration of medical opinions implicates the ALJ's assignment of significant weight to the opinions of Drs. Kester and Gollogly based on the consistency of their opinions with the evidence of record. The ALJ should, therefore, reconsider this opinion evidence on remand. In so doing, the ALJ should also specifically address whether the RFC limitation to carrying out simple and some detailed tasks in a predictable routine fully accounts for the opinions of Drs. Kester and Gollogly that plaintiff would work best in a setting with few distractions, less stimulation, and time or performance pressure.

F.  <u>Evidence Submitted to Appeals Council</u>

In a January 2014 letter submitted to the Appeals Council, Dr. Monica Mayhill opines as to plaintiff's inability to work based on cognitive delays, pseudoseizures, chronic pain, and side effects of anti-seizure medications. (AR 584.) She states that plaintiff's pseudoseizures occur multiple times a day, are not fully controlled by medications, and that "[e]ven though these are pseudoseizures they are neurological events that cause her to be cognitively absent[.]" (*Id*.) Dr. Mayhill opines plaintiff would not be able to stay on task and would not be reliable even in an unskilled job, and that these limitations have been ongoing since her knowledge of plaintiff, beginning in June 2011, through the present. (*Id*.)

In a December 2012 evaluation submitted to the Appeals Council, Dr. William Burkhart opined plaintiff should be awarded disability "based on severe and psychiatric dysfunction over the past three years (since early 2010) owing" to her meningioma and long history of psychological problems "predictably aggravated" by the tumor, the surgery, and related losses in functioning. (AR 590.) He acknowledged testing results reflected over-reporting of symptoms, but not to the point of invalidating plaintiff's profiles, and also found those results to reflect, *inter alia*, genuinely severe psychiatric instability, recurrent major depression, and anxiety. (*Id.*) He found plaintiff severely to very severely impaired in a number of specific areas, including spatial perceptual skills, word finding and verbal expression, and speed of processing. (*Id.*) Dr. Burkhart also found no evidence plaintiff was primarily driven by primary or secondary gains. (AR 591.) He concluded: "My examination bottom-line yields sound evidence to support her SSDI disability claim." (*Id.*)

The Commissioner avers the Appeals Council concluded this evidence did not provide a basis for changing the ALJ's decision because it was about a later time. However, while the Appeals Council did indicate it considered the evidence from Drs. Mayhill and Burkhart, it specifically found "Progress notes from Swedish Neuroscience Institute dated from January 10, 2013 to October 2, 2013" to be about a later time and, therefore, not affecting the ALJ's decision as to whether plaintiff was disabled beginning on or before August 3, 2012. (AR 1-2, 5.) While the description of the evidence considered could reflect a drafting error, it remains that both Dr. Mayhill and Dr. Burkhart related their opinions back to the relevant time period. *See generally Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should

REPORT AND RECOMMENDATION
PAGE - 13

not be disregarded solely on that basis.") (citations omitted). Moreover, the 2014 opinions of Dr. Mayhill are consistent with her August 3, 2011 letter opining as to plaintiff's "long term disability, possibly permanent[]" due to her brain tumor and resulting seizures (AR 480), which, like the similar letter from Dr. Gierke, the ALJ did not address. Finally, given the many different errors in the ALJ's consideration of the medical record, this new evidence further calls into doubt the substantial evidence support for the ALJ's decision. The ALJ should, as such, consider all of the evidence from Drs. Mayhill and Burkhart on remand.

### Credibility

The ALJ found that, while plaintiff's medically determinable impairments could reasonably be expected to cause some symptoms, her statements concerning the intensity, persistence, and limiting effect of those symptoms were only partially credible. The ALJ was required to provide clear and convincing reasons in support of this conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The Court finds the ALJ's credibility determination to lack the support of substantial evidence.

The ALJ concluded the medical evidence failed to substantiate limitations to the extent alleged by plaintiff. (*See* AR 37-39.) However, the above-described errors in the ALJ's consideration of the medical evidence implicate his reliance on his interpretation of the medical evidence as a basis for finding plaintiff not fully credible.

The ALJ also concluded plaintiff's "ongoing support from social welfare systems further raises some questions as to whether her current unemployment is truly the result of the alleged medical problems or simply a lifestyle choice[,]" describing the record as showing plaintiff had "taken advantage of public assistance." (AR 37.) However, in the absence of some type of evidence plaintiff was improperly motivated in her pursuit and receipt of public assistance, as

REPORT AND RECOMMENDATION
PAGE - 14

opposed to merely utilizing public assistance available to her, the inference drawn by the ALJ was not reasonable. *See generally Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence."), and SSR 86-8p ("Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence.") *See also Cha Yang v. Comm'r of SSA*, No. 10-17590, 2012 U.S. App. LEXIS 13798 at *205-06 (9th Cir. Jul. 6, 2012) ("If a petitioner's desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant would ever be found credible."); *Ratto v. Secretary, Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1428-29 (D. Or. 2008) ("By definition, every claimant who applies for Title II benefits does so with the knowledge – and intent – of pecuniary gain. That is the very purpose of applying for Title II benefits. . . . If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible.")

Finally, plaintiff raises legitimate questions going towards the ALJ's reliance on her daily activities as a basis for discounting her credibility. It is not clear, for example, whether the evidence supports the ALJ's conclusion that plaintiff played the guitar on a daily basis between January 2010 and May 2011, or whether the evidence reflects that she tried to do so depending on her symptoms. (AR 36, 239, 242, 285, 288; *see also* AR 66-67, 437.) For this reason, and for the reasons stated above, the ALJ should reconsider plaintiff's credibility on remand.

<u>Lay Testimony</u>

Plaintiff submitted written statements from her friends Stephanie Luckerath and Brandon Lodge, her fiancé Robyn California, and her sister Gayle Solberg. (AR 246-53, 282-83, 301-02.) The ALJ was required to provide germane reasons for rejecting the statements from these lay

witnesses.  *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

While the ALJ here provided some appropriate reasons for according only some weight to the lay evidence (AR 43-44), the Court nonetheless concludes the ALJ should reconsider this evidence on remand.  For example, the errors in the ALJ's evaluation of the medical evidence implicate his reliance on his interpretation of the medical evidence as a basis for rejecting lay testimony.  (*See id.*)

Also, while an ALJ is not prohibited from considering evidence raising questions as to the motivation of a lay witness, he must insure the reasoning provided in relation to a lay witness is tied specifically to that witness, as opposed to a broad generalization.  *See Valentine v. Comm'r SSA*, 574 F.3d 685, 693-94 (9th Cir. 2009) ("[I]nsofar as the ALJ relied on characteristics common to all spouses, she ran afoul of our precedents.  This does not mean an ALJ must accept the testimony of a spouse who knows little about a claimant's functional capacity. But the ALJ must explain such ignorance in the individual case. Similarly, evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony. . . . [W]e remind ALJs to tie the reasoning of their credibility determinations to the particular witnesses whose testimony they reject.")  In this case, arguably, the ALJ reasonably concluded plaintiff's fiancé had motive to exaggerate her symptoms, given evidence she "has been living with him and relying on his assistance" (AR 44 (citing AR 301, 537, and 60-74)), and properly questioned Luckerath's "close relationship" with plaintiff and the "possibility" her statements were influenced by a desire to help plaintiff (AR 43), *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (consideration of lay witnesses' "'close relationship'" to claimant and possibility she was "'influenced by her desire to help [him]'"

REPORT AND RECOMMENDATION
PAGE - 16

served as reasons germane to lay witness). However, given the many errors in the ALJ's consideration of plaintiff's claim, the Court concludes the ALJ should further consider whether the evidence in this case does, in fact, support the propriety of questioning the motivation of these lay witnesses.

### Step Five

Plaintiff argues the ALJ erred in reaching his decision at step five by relying solely on the Medical-Vocational Guidelines and failing to obtain the testimony of a vocational expert given the evidence supporting the existence of non-exertional limitations significantly narrowing the range of work she could perform. *See Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988); SSR 83-14. Given the above-described errors, the ALJ should obtain the assistance of a vocational expert and reconsider plaintiff's claim at step five.

### CONCLUSION

This matter should be, as requested by plaintiff, REMANDED for further administrative proceedings.

### DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will

///

REPORT AND RECOMMENDATION
PAGE - 17

be ready for consideration by the District Judge on **December 26, 2014**.

DATED this <u>10th</u> day of December, 2014.

*[signature]*

Mary Alice Theiler
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 18